IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JERRY A. CONQUEST,

          Plaintiff,

   v.

WCM MORTGAGE CORP., et at.

          Defendants.

CIVIL ACTION
NO. 16-03604

## OPINION

**Slomsky, J.**                                                                 **March 30, 2017**

### Table of Contents

I.   INTRODUCTION ............................................................................................ 1

II.  BACKGROUND .............................................................................................. 2

   A.  Conveyance of the Property and the Terms of the First Mortgage ..................... 2

   B.  The Fire Insurance Policy ....................................................................... 5

   C.  The Second Mortgage Assignment ........................................................... 6

   D.  Fire Loss and Insurance Proceeds ............................................................ 7

   E.  Alleged Misrepresentations About the Insurance ......................................... 8

   F.  The Instant Action ................................................................................ 9

III. STANDARD OF REVIEW .............................................................................. 10

IV.  ANALYSIS ................................................................................................... 12

   A.  All Claims Made Against MERSCORP Holding, Inc. Will be Dismissed ......... 12

   B.  Count I – Breach of Fiduciary Duty ......................................................... 13

      1.  All Mortgage Defendants – WMC Mortgage LLC ("WMC"), Mortgage
          Electronic Registration Systems, Inc. ("MERS"), and Vanderbilt Mortgage
          and Finance ("Vanderbilt") – did not owe Plaintiff a Fiduciary Duty ......... 14

         a.  A Fiduciary Relationship Did Not Exist ............................................ 14

         b.  The Mortgage Defendants Were Not Trustees of the Insurance Proceeds ........ 15

      2.  HomeFirst Agency, Inc. ("HomeFirst") and Southwest Business
          Corporation ("SWBC") did not owe Plaintiff a Fiduciary Duty ................. 16

      3.  American Modern Home ("AMH") did not owe Plaintiff a Fiduciary Duty ............. 17

i

C.  Count II – Civil Conspiracy ....................................................................... 18

1.  The Mortgage Defendants did not Engage in Civil Conspiracy................................ 19

2.  HomeFirst and SWBC did not Engage in Civil Conspiracy....................................... 20

3.  American Modern Home did not Engage in Civil Conspiracy.................................... 21

D.  Count III – Breach of Contract .................................................................. 21

1.  Vanderbilt did not Breach its Contract with Plaintiff ................................ 22

2.  WMC and MERS did not Breach a Contract with Plaintiff ........................................ 24

3.  HomeFirst and SWBC did not have a Contract with Plaintiff.................................... 25

4.  AMH did not have a Contract with Plaintiff ................................................ 25

E.  Count IV – Breach of Duty of Good Faith and Fair Dealing.............................. 26

F.  Count V – Negligent Misrepresentation/Fraud ................................................ 27

1.  Vanderbilt did not Misrepresent the Terms of the Mortgage or Insurance Coverage ....................................................................................... 28

2.  WMC and MERS did not Misrepresent the Terms of the Mortgage ......................... 29

G.  Count VI – Unjust Enrichment ................................................................... 30

1.  The Mortgage Defendants were not Unjustly Enriched ............................................ 30

2.  HomeFirst and SWBC were not Unjustly Enriched ................................................. 31

3.  AMH was not Unjustly Enriched ................................................................ 31

H.  Count VII –  Trust Liability/Bailment ........................................................ 31

1.  Constructive Trust................................................................................ 31

2.  Bailment........................................................................................... 33

I.  Count VIII –Diminution in Value and Waste .................................................... 34

J.  Count IX – Conversion, Theft, and Misappropriation ........................................ 35

1.  The Claim of Conversion of the Insurance Proceeds by the Mortgage Defendants is Without Merit................................................................. 35

a.  WMC and MERS................................................................................... 35

b.  Vanderbilt......................................................................................... 35

2.  Plaintiff's Claim of Criminal Theft Also Fails ................................................ 36

3.  The Claim of Misappropriation of the Insurance Proceeds is Without Merit............. 37

K.  Count X – Consumer Law Violations ............................................................ 37

1.  The Mortgage Defendants did not Violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")............................... 37

2.      The Pennsylvania Fair Credit Extension Uniformity Act ("PFCEUA")
        Claim Will be Dismissed ............................................................................ 38

3.      The Mortgage Defendants did not Violate the Fair Debt Collection Practices
        Act ("FDCPA") ........................................................................................... 38

4.      Plaintiff does not Plausibly Allege a Violation of the Federal Fair Credit
        Reporting Act ............................................................................................. 39

5.      Plaintiff does not Plausibly Allege a Violation of the Real Estate Settlement
        Procedures Act ............................................................................................. 40

6.      The Mortgage Defendants did not Accelerate Plaintiff's Loan under
        Pennsylvania Code Section 31.203(a) ...................................................... 40

7.      The Mortgage Defendants did not violate the Pennsylvania Usury Law ................... 41

L.   Count XI – Negligence Per Se ............................................................................. 41

**V.   AMENDING THE AMENDED COMPLAINT WOULD BE FUTILE** ........................ 42

**VI.  CONCLUSION** ................................................................................................. 43

## I.      INTRODUCTION

Before the Court are Defendants' Motions to Dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Defendants are WMC Mortgage LLC (Doc. No. 28), Mortgage Electronic Registration Systems, Inc. ("MERS"), MERSCORP Holdings, Inc. (Doc. No. 19), Vanderbilt Mortgage and Finance, Inc. (Doc. No 18), American Modern Home (Doc. No. 14), HomeFirst Agency, Inc. (Doc. No. 20), and Southwest Business Corporation (Doc. No. 17) (collectively "Defendants").[2]

On May 24, 2016, Plaintiff commenced this action in the Court of Common Pleas of Delaware County.  In his Amended Complaint, he alleges that Defendants committed federal and state violations by misappropriating fire insurance proceeds.  The fire loss occurred on April 10, 2014 and totally destroyed Plaintiff's home.[3]  Plaintiff claims that Defendants withheld from him the proceeds which would have been used to restore and repair his residential home.  (Doc. No. 16 at ¶¶ 10–14.)  On June 30, 2016, Vanderbilt Mortgage and Finance, Inc., Mortgage Electronic Registration Systems, Inc. and MERSCORP Holdings, Inc., and HomeFirst Agency, Inc., removed this action to this Court.  (Doc. No. 1.)

---

[1] On June 30, 2016, this case was removed by Vanderbilt Mortgage and Finance, Inc., HomeFirst Agency, Inc., Mortgage Electronic Registration Systems, Inc., and MERSCORP Holdings, Inc. to this Court.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

[2] In the Amended Complaint, Plaintiff groups Defendants into two broad categories, the "Mortgage Defendants" and the "Insurance Defendants."  (Doc. No. 16 at ¶ 87-88.)  The Court will use this grouping in this Opinion.  The "Mortgage Defendants" are WMC Mortgage LLC, Mortgage Electronic Registration Systems, Inc. ("MERS"), MERSCORP Holding, Inc., and Vanderbilt Mortgage and Finance, Inc.  MERSCORP Holdings, Inc., is the parent company of MERS.  (Id. at ¶ 4.)  The "Insurance Defendants" are American Modern Home, HomeFirst Agency, Inc., and Southwest Business Corporation.

[3] Plaintiff alleges that "on or about April 10, 2014, the Property was destroyed by an electrical fire."  (Doc. No. 16 at ¶ 51.)  Plaintiff claims that as a result of the "misappropriation of the insurance proceeds, [he] was left with an uninhabitable rubble of a home and had to begin the slow process of restoration and repair using his own monies."  (Id. at ¶ 75.)  (See also Doc. No. 16 at Ex. I, which is a photograph of the house after the fire showing the loss.)

1

On August 8, 2016, Plaintiff filed an Amended Complaint.  (Doc. No. 16.)   Each Defendant responded by filing a Motion to Dismiss the Amended Complaint.  (Doc. Nos. 14, 17, 18, 19, 20, 28.)  Plaintiff filed a response to each motion (Doc. Nos. 22, 31, 32, 33, 35), and all Defendants submitted replies.  (Doc. Nos. 24, 25, 36, 37, 38, 39.)  For reasons that follow, the Court will grant the Motions to Dismiss.  (Doc. Nos. 14, 17, 18, 19, 20, 28.)

## II.   BACKGROUND

### A.  Conveyance of the Property and the Terms of the First Mortgage

On October 31, 2006, Plaintiff's father conveyed to him the Property located at 613 Summer Street, Media, Delaware County, Pennsylvania 19063 ("Property").  (Doc. No. 16 at ¶ 10.)  To accomplish this sale, Plaintiff secured a loan of $272,000 from WMC Mortgage LLC and signed a Mortgage and Promissory Note on November 10, 2006 to cover the purchase of the Property.[4]  (Id. at ¶ 12.)

The Mortgage was executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee[5] for WMC Mortgage LLC ("WMC"), and WMC's successors and assigns.[6]  (Doc. No. 16, Ex. B at 2.)   The Mortgage provides in relevant part:

---

[4] Plaintiff was required to comply with the covenants of the Mortgage.  Relevant covenants required that Plaintiff: maintain hazard insurance on the Property; not destroy or allow the Property to deteriorate; be jointly and severally liable as a co-signer; and have the lender approve any transfer of interest in the Property by the borrower.  (Doc. No. 19, Ex. B. at 2-15.)

[5] A nominee is defined as "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others."  Nominee, BLACK'S LAW DICTIONARY (10th ed. 2010).

[6] The Third Circuit has described MERS as follows:

> MERS is a national electronic loan registry system that permits its members to freely transfer, among themselves, the promissory notes associated with mortgages, while MERS remains the mortgagee of record in public land records as "nominee" for the note holder and its successors and assigns.  MERS facilitates the secondary market for mortgages by permitting its members to transfer the

2

(B) "Borrower" is JERRY A. CONQUEST.  Borrower is the mortgagor under this Security instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate Corporation that is acting solely as nominee for Lender and Lender's successors and assigns.  MERS is the mortgagee under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint MI 48501-2026, tel. (888) 679-MERS.

(D) **"Lender"** is WMC MORTGAGE CORP.

(Doc. No. 19, Ex. B at 2.)   On November 29, 2006, the Mortgage was recorded with the Delaware County Recorder of Deeds ("Recorder's Office").  (Id.)  The Promissory Note was never recorded with the local recorder of deeds.  (Id.)

On June 22, 2011, MERS, as the nominee for WMC, executed an Assignment of Mortgage ("First Assignment") to Vanderbilt Mortgage and Finance, Inc.  (Doc. No. 19, Ex. C at 2.)[7]  On July 19, 2011, the First Assignment was recorded with the Delaware County Recorder's

---

beneficial interest associated with a mortgage—that is, the right to repayment pursuant to the terms of the promissory note—to one another, recording such transfers in the MERS database to notify one another and establish priority, instead of recording such transfers as mortgage assignments in local land recording offices.

Montgomery Cnty. v. MERSCORP Inc., 7395 F.3d 372, 374 (3d Cir. 2015).

[7]   The parties disagree on the date that the First Assignment occurred.  Plaintiff asserts the First Assignment occurred on July 19, 2011.  (Doc. No. 16 at ¶ 22-25.)  Plaintiff fails, however, to provide the record of the first assignment and states that: "[t]he July 19, 2011 Mortgage Assignment is not presently available for attachment to this Complaint but it is recorded with the Delaware County Recorder of Deeds and is accordingly exempt from attachment pursuant to Pa.R.C.P. 1019(g)."  (Id. at ¶ 22, n.10.)  In relevant part PA. R. CIV. P. 1019(g) states:

A party may incorporate by reference any matter of record in any State or Federal court of record whose records are within the county in which the action is pending, or any matter which is recorded or transcribed verbatim in the office of the prothonotary, clerk of any court of record, recorder of deeds or register of wills of such county.

3

Office.   (Id.)   Pursuant to the First Assignment, MERS, on behalf of WMC, assigned to Vanderbilt all its right, title, and interest in and to the Mortgage.[8]  (Id.)

The Mortgage required that Plaintiff maintain hazard insurance on the Property.   It contained the following provision:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.   Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.   These amounts shall bear interest at the Note rate from the date of

---

Pa. R. Civ. P. 1019(g).   Defendants Vanderbilt Mortgage and Finance, Inc., MERS, MERSCORP Holding, Inc., and HomeFirst Agency, Inc., note that the First Assignment occurred on June 22, 2011, and attach a copy of the record to their filings in this case.  (See, e.g., Doc. No. 18, Ex. C at 2.)  From the record, it appears that Plaintiff is using the date of the stamp on the First Assignment, and Defendants are using the date that the First Assignment was signed.   In any event, the exact date of the First Assignment is not critical to the disposition of the issues raised here.

[8]  The First Assignment provides:

> FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for WMC MORTGAGE CORP., its successors and assigns, hereby assign and transfer to VANDERBILT MORTGAGE AND FINANCE, INC., its successors and assigns, all its right, title and interest in and to certain deed of trust/mortgage executed by JERRY A. CONQUEST, and bearing the date of the 10th day of NOVEMBER 2006 A.D, and recorded on the 29th day of NOVEMBER, 2006 A.D, [sic] in the office of the Recorder of DELAWARE County, State of PENNSYLVANIA in Book 03967 at Page 0717.

(Doc. No. 19, Ex. C at 2.)

disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

\* \* \*

In the event of loss, Borrower shall give prompt notice to insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened . . .  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower . . .

(Doc. No. 19, Ex. B at 6-7.)

### B.  The Fire Insurance Policy

On April 18, 2012, Vanderbilt notified Plaintiff that it had obtained a lender-placed hazard insurance policy ("Policy") covering the Property.[9]  (Doc. No. 16 at ¶¶ 39-40.)  American Modern Home insurance company ("AMH") issued the Policy to Vanderbilt.  (Doc. No. 19, Ex. D at 4.)  The Notice of Placement stated that Vanderbilt purchased the Policy because Plaintiff failed to provide adequate proof of hazard insurance covering the Property.  (Doc. No. 16, Ex. F.) Vanderbilt obtained the Policy from AMH through two insurance brokers, Southwest Business Corporation (SWBC) and HomeFirst Agency, Inc.  (Id. at ¶ 40.)  The Notice of Placement

---

[9]   Plaintiff failed to acquire or maintain fire insurance as required by the Mortgage.  Therefore, Vanderbilt purchased the insurance and notified Plaintiff in a document known as a "Notice of Placement."  The Notice of Placement enclosed the insurance certificate for the Policy.  (Doc. No. 16 at ¶ 40.)  In relevant part, the Notice of Placement provided:

This letter is to inform you that a lender-placed hazard insurance policy has been obtained on your behalf.  We previously notified you explaining the circumstances surrounding your need to have insurance coverage and explaining your options, but to date have not received proof of acceptable hazard insurance coverage.

(Doc. No. 16, Ex. F at 1.)

contained the insurance certificate for Plaintiff to review.  (Id.)  The certificate stated that the named insured under the Policy was "Vanderbilt Mortgage and Finance Inc.," the yearly Policy Premium was $1,614, and the insured value of the Property was $161,420.[10]  (Doc. No. 19, Ex. D at 4.)   Additionally, the Notice of Placement stated that if Plaintiff provided proof of acceptable hazard insurance, the Policy would be canceled.[11]  Plaintiff never provided his own hazard insurance policy.  The Policy was renewed twice, first in April 2013 and then in April 2014.  (Doc. No. 16 at ¶ 44.)

### C.  The Second Mortgage Assignment

On December 3, 2012, MERS, again as the nominee for WMC, executed a second Assignment of [the] Mortgage to Vanderbilt ("Second Assignment").  (Doc. No. 16, Ex. D at 1.) The Second Assignment was recorded with the local Recorder's Office on December 19, 2012.

---

[10] The name and amounts were taken from the "Evidence of Insurance" document which states:

"Insured/Lender Name & Address VANDERBILT MORTGAGE & FINANCE PO BOX 9800 MARYVILLE, TN 37802."  (Doc. No. 19, Ex. D at 4.)  In the calculation of insurance costs section, the document states: "Premium $1,614.00."  (Doc. No. 19, Ex. D at 4.)  In the "Coverages and Limits of Liability" section, the document states: "Described Dwelling/Building $161,420.  (Doc. No. 19, Ex. D at 4.)

[11] The Notice of Placement provides:

You still may obtain insurance of your own choosing on your home.  If you provide us with proof that you have obtained adequate insurance on your home, we will cancel the insurance that we purchased and refund or credit any unearned premiums to your advance or escrow account.  If, within 30 days after the date this notice was sent to you, you provide us with proof that you had adequate insurance on your home as of the date we also purchased insurance and that you continue to have the insurance that you purchased yourself, we will cancel the insurance that we purchased without charging you any costs, interest or [any] other charges in connection with the insurance that we purchased.

(Doc. No. 19, Ex. D at 3.)

(Id.)  Pursuant to the Second Assignment, MERS, on behalf of WMC, assigned to Vanderbilt all its right, title, and interest in and to the Mortgage.[12]  (Id.)

### D.  Fire Loss and Insurance Proceeds

On April 10, 2014, the Property was destroyed by an electrical fire.  (Doc. No. 16 at ¶ 51.)  The fire resulted in a total loss of Plaintiff's home.  (Id. at ¶ 75.)  Thereafter, Plaintiff claims he contacted AMH and/or one of the other Insurance Defendants.  (Id. at ¶ 54.)  One or more of the Insurance Defendants advised Plaintiff that the insurance proceeds would be paid to Vanderbilt because it was the named insured on the Policy.[13]  (Id. at ¶ 55.)  On May 8, 2014, policy proceeds in the amount of $161,420 were disbursed to the named insured, Vanderbilt. (Doc. No. 14 at Ex. F.)  Vanderbilt used the insurance proceeds to reduce the Mortgage balance. (Doc. No. 16 at ¶ 55.)  Although the proceeds were insufficient to satisfy the full balance of the Mortgage, Vanderbilt wrote off the remaining balance, and docketed a satisfaction of mortgage form with the Recorder's Office on July 15, 2014.  (Id. at ¶ 68.)  At this point, Plaintiff was no longer liable for mortgage payments on the Property.

---

[12] The Second Assignment provides:

> FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. ("MERS") . . . as nominee for WMC Mortgage Cor., its successors and assigns, hereby assigns and transfers to VANDERBILT MORTGAGE AND FINANCE, INC., its successors and assigns, . . . all its right, title, and interest in and to a certain Mortgage/Deed of Trust executed by Jerry A. Conquest, dated November 10, 2006, and recorded [on] November 29, 2006, in the office of the Recorder of Delaware County, State of Pennsylvania as Instrumental Number 2006109366.

(Doc. No. 16, Ex. D at 1.)  This assignment is nearly identical to the First Assignment.

[13] Plaintiff does not specify which Insurance Defendant gave him this information.

In May 2014, Vanderbilt reported to Experian Credit agency that the Mortgage had been "charged off."[14]  (Doc. No. 16, Ex. O at 3.)  An Experian report, prepared in 2015 in response to a dispute Plaintiff asserted, states:

> Status: Account charged off.   $0 written off.   This account is scheduled to continue on record until Mar 2020.
>
> Comment: Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).  This item was updated from our processing of your dispute Nov 2015.

(Id.)  Additionally, the Experian report noted that Plaintiff's mortgage payments were "30 days past due" from May 2013 to the date of the "charge off" in May 2014.  (Id.)

### E.  Alleged Misrepresentations About the Insurance

In order to compel the payment of the insurance proceeds to him, Plaintiff filed a consumer complaint against Vanderbilt.  With the help of the Consumer Financial Protection Bureau ("CFPB") and the aid of an United States Congressman, Plaintiff filed a Complaint with the CFPB alleging that he did not receive these funds to rebuild his home after a fire loss.[15] (Doc. No. 16 at ¶ 60; Doc. No. 16, Ex. N.)  On August 13, 2014, in response to Plaintiff's consumer complaint, Vanderbilt sent him a letter explaining the actions that it had taken following the fire.  Vanderbilt's letter states as follows:

> According to VMF's records the insurance in force at the time of loss was a force-placed insurance policy.  This type of policy is put in place when the owner fails to provide proof of insurance coverage for the Property.  Please find enclosed a copy of the Mortgage for your review, as well as copies of notices sent to you regarding the force-placed insurance policy.  You should have received a copy of the policy directly from the insurer.  The Mortgage states:

---

[14] A charge-off is defined as "treat[ing] (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." Charge-Off, BLACK'S LAW DICTIONARY (10th ed. 2010).  Charge-offs often reflect a negative borrowing history of a consumer.

[15] Plaintiff does not disclose which United States Congressman he contacted.  (Doc. No. 16 at ¶ 62.)

> [T]he Lender may, but is not obligated to, obtain and pay insurance coverage on behalf of the customer in order to protect their security interest in the Property when sufficient insurance coverage has not been maintained or proof of such coverage has not been provided to the Lender.  This coverage may or may not protect the Borrower, their equity in the Property, or contents of said Property, and the cost of this insurance may exceed the cost of similar insurance coverage the Borrower could obtain on their own.  Furthermore, the amounts disbursed by Lender would be considered as additional debt of the Borrower and secured by the Mortgage.

> VMF was not required to obtain insurance coverage at all, much less insurance that would have protected your interest in the Property.  The force-placed policy that VMF procured was a lender interest policy.  Accordingly, the insurer paid the insurance proceeds directly to VMF and VMF applied them to the principal balance.

(Doc. No. 16, Ex. N at 2.)  No further action was taken against Vanderbilt by the Consumer Financial Protection Bureau or the unnamed United States Congressman regarding the consumer complaint.  (Doc. No. 15 at ¶ 103.)

**F.  The Instant Action**

Plaintiff alleges here that Vanderbilt and the other "Mortgage Defendants," including MERS and MERSCORP Holdings, Inc., should have given him the insurance proceeds for restoration or repair of the Property.  Plaintiff argues, they "misappropriated the insurance proceeds in violation of the terms of the Mortgage." (Doc. No. 16 at ¶¶ 57-59.)  Plaintiff further alleges that Vanderbilt subsequently made misrepresentations about the terms of the Mortgage and the hazard policy.  Plaintiff claims these misrepresentations were made in response to the consumer complaint lodged by him, as justification for Vanderbilt retaining the insurance proceeds.  (Id. at ¶¶ 60-67.)  Plaintiff alleges that Vanderbilt, by writing off the remaining balance of the loan and reporting a "charge-off" to credit agencies, negatively affected his credit score and his ability to borrow money from other lenders.  (Id. at ¶¶ 69-74.)

In separate counts in his Amended Complaint, Plaintiff asserts eleven claims against various Defendants.  They are: (1) Breach of Fiduciary Duty; (2) Civil Conspiracy; (3) Breach of Contract; (4) Breach of the Duty of Good Faith and Fair Dealing; (5) Negligent Misrepresentation/Fraud; (6) Unjust Enrichment; (7) Bailment Liability/Trust Liability; (8) Dimuition [sic] in Value & Waste; (9) Conversion, Theft, Misappropriation; (10) Consumer Law Violations; and (11) Negligence Per Se.  (Id. at ¶¶ 86-132.)

In response to Plaintiff's Amended Complaint, the Motions to Dismiss were filed.  On September 22, 2016, a hearing on the Motions was held.  (Doc. No. 40.)  The Motions are now ripe for disposition.

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

The Third Circuit has held that, in addition to the complaint, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consolidated Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Further, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  United States Express Lines v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

11

IV.     ANALYSIS[16]

   A. All Claims Made Against MERSCORP Holding, Inc. Will be Dismissed

   Plaintiff's claims against MERSCORP will be dismissed.  In the Amended Complaint, his

sole basis for liability by MERSCORP is that it is the parent company of Mortgage Electronic

Registration Systems, Inc. ("MERS").  (Doc. No. 16 at ¶¶ 4, 17.)  Plaintiff does not allege that

MERSCORP, in its own capacity, took any action against him regarding the Mortgage, the

Policy, or the insurance proceeds.  (See generally, Doc. No. 16.)   In essence, Plaintiff's claims

that MERSCORP is liable under a theory of guilt by association.  However, Plaintiff has failed to

plead the nature and extent of the relationship between MERS and MERSCORP that would

make any claims against MERSCORP viable.

   "It is a general principle of corporate law deeply 'ingrained in our economic and legal

systems' that a parent corporation . . . is not liable for the acts of its subsidiaries."  United States

v. Bestfoods, 524 U.S. 51, 61 (1998).  "Mere ownership of a subsidiary does not justify the

imposition of liability on a parent."  Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d

Cir. 2001).  The corporate veil will only be pierced where "the corporate form would otherwise

be misused to accomplish certain wrongful purposes, most notabl[y] fraud, on the shareholder's

behalf."  CMF Assocs., LLC v. Scout Media, Inc., No. 15-01250, 2015 WL 2125131, at *2 (E.D.

Pa. May 6, 2015) (quoting Bestfoods, 524 U.S. at 62).

   The Third Circuit has held that a court must look to the following factors to determine if

it may pierce the corporate veil to hold a parent corporation accountable:

---

[16] This Section of the Opinion covers the claims in the order they are set forth in Plaintiff's
Amended Complaint.  Each subsection will discuss the claim at issue as well as the facts pled
viewed in the light most favorable to Plaintiff.  Each argument will be discussed separately.
However, due to the nature of Plaintiff's claims against MERSCORP Holding, Inc.
("MERSCORP") as the parent company to Mortgage Electronic Registration Systems, Inc.
("MERS"), the claims against MERSCORP will be reviewed first.

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.

Pearson, 247 F.3d at 484-85.  This intensive fact-based analysis is meant to determine whether the subsidiary's corporate form is "little more than a legal fiction."  Id. at 485.  The plaintiff is responsible for pleading and demonstrating factual allegations about "the nature and extent of the relationship between a parent and its subsidiary corporation."  CMF Assocs., LLC, 2015 WL 2125131, at *3 (quoting Richardson v. CSS Indus., Inc., No. 08-cv-3900, 2009 WL 2230761, at *3 (E.D. Pa. July 27, 2009)).

Here, Plaintiff's sole allegation against MERSCORP is that it is the parent company of MERS.  (Doc. No. 16. at ¶¶ 4, 17.)  He fails to plead the nature and extent of the relationship between MERSCORP and MERS that would justify piercing the corporate veil to impose liability on MERSCORP.  (See generally, Doc. No. 16.)  None of the factors that would justify piercing the corporate veil have been alleged in the Amended Complaint.  In the absence of these allegations, "[a] corporation . . . is not liable for the acts of its subsidiaries."  Bestfoods, 524 U.S 61.  For this reason, all counts against MERSCORP Holdings, Inc., will be dismissed.

## B.  Count I – Breach of Fiduciary Duty

In Count I, Plaintiff alleges that the Mortgage Defendants and the Insurance Defendants breached a fiduciary duty they owed to him.  (Doc No. 16 at ¶¶ 87-88.)  Plaintiff alleges that the Mortgage Defendants "breached their respective fiduciary duties as trustees of the insurance proceeds causing severe harm to Plaintiff . . ."  (Id. at ¶ 87.)  Plaintiff also alleges that the Insurance Defendants breached their fiduciary duties as insurance carriers by failing to pay to him the insurance proceeds for purposes of restoration and repair of the Property.  (Id. at ¶ 88.)

13

To establish a breach of fiduciary duty under Pennsylvania law, a plaintiff must prove not only a fiduciary duty, but also "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bring[ing] about plaintiff's injuries." Dinger v. Allfirst Fin., Inc., 82 F. App'x 261, 265 (3d Cir. 2003).

The fundamental element to establish a breach of a fiduciary duty is the existence of fiduciary relationship between both parties. Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 414-15 (E.D. Pa 2006). A claimant cannot recover if they are unable to prove a fiduciary duty exists between the parties. Id. A fiduciary relationship exists "whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's [best] interest." Id. at 415 (citing Silver v. Silver, 219 A.2d 659, 662 (Pa. 1966); Basile v. H&R Block, Inc., 777 A.2d 95, 101-02 (Pa. Super. Ct. 2001)).

1.  **All Mortgage Defendants – WMC Mortgage LLC ("WMC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Vanderbilt Mortgage and Finance ("Vanderbilt") – did not owe Plaintiff a Fiduciary Duty**

    a.  **A Fiduciary Relationship Did Not Exist**

Plaintiff fails to establish the existence of a fiduciary relationship with WMC, MERS, and Vanderbilt. Under Pennsylvania law, it is well established that a lender does not owe a fiduciary duty to a borrower. Allen v. Wells Fargo, N.A., No. 14-5283, 2015 WL 5137953, at *5 (E.D. Pa. Aug. 28, 2015) ("Under Pennsylvania law, a lender generally does not owe a duty to a borrower."); see also Schnell v. Bank of N.Y. Mellon, 828 F. Supp. 2d 798, 806 (E.D. Pa. 2011) (denying plaintiff's negligent misrepresentation claim under Pennsylvania law against lender

14

because "a lender acts in his financial interest and does not owe a fiduciary duty to the borrower."); Federal Land Bank of Baltimore v. Fetner, 410 A.2d 344, 348 (Pa. Super. Ct. 1979) ("[T]he relationship between the borrower and lender does not create a confidential relationship."). Here, according to the Amended Complaint, WMC was the lender and Plaintiff was the borrower. (Doc. No. 16 at ¶ 12.) Their relationship was merely an arm's length one of lender and borrower. Thus, WMC did not owe a fiduciary duty to Plaintiff.[17]

Moreover, a fiduciary relationship did not exist between Plaintiff and Vanderbilt. Pennsylvania law does not recognize the existence of a fiduciary relationship between a mortgagee and a mortgagor. See, e.g., Schnell, 828 F. Supp. 2d at 806 (citing Federal Land Bank of Baltimore, 410 A.2d at 344); Caplen v. Sec. Nat'l Servicing Corp., 514 F. Supp. 2d 746, 752 (E.D. Pa. 2007). In addition, Plaintiff had no fiduciary relationship with WMC and MERS at the time of the fire loss. MERS, in its nominee capacity, assigned the WMC Mortgage to Vanderbilt, and both WMC and MERS did not hold an interest in the Mortgage when the fire occurred. (Doc. No. 19, Ex. C at 2; Doc. No. 16, Ex. D at 1.) Therefore, no fiduciary duty could exist between them at that time. (Doc. No. 15 at ¶¶ 10-85.) Accordingly, Plaintiff has failed to allege a fiduciary relationship with WMC, Vanderbilt, and MERS.

### b. The Mortgage Defendants Were Not Trustees of the Insurance Proceeds

Plaintiff also alleges that WMC, MERS, and Vanderbilt were fiduciaries because these three entities were trustees of the insurance proceeds. Neither WMC nor MERS nor Vanderbilt ever served as trustees of the insurance proceeds. Plaintiff does not allege any facts to support

---

[17] WMC did not retain an interest in the mortgage at the time of the fire loss. See Allen, 2015 WL 5137953, at *5.

this claim.   (<u>See generally</u>, Doc. No. 16.)   Furthermore, WMC and MERS never received the insurance proceeds.

Additionally, the Court in <u>Caplen v. Sec. Nat'l Servicing Corp.</u> noted:

> At least one court has held that the force-placed insurance arrangement does create a fiduciary duty between homeowner and lender . . . However, even if a fiduciary relationship was formed by the lender's contractual undertaking to purchase insurance on the collateral, that duty would not have extended beyond the obligations laid out by the unambiguous language of the mortgage and note: that insurance be purchased to cover up to the existing principal balance on the mortgage loan in the event that no other insurance paid out to cover those damages.

<u>Caplen v. Sec. Nat'l Servicing Corp.</u>, 514 F. Supp. 2d 746, 752 (E.D. Pa. 2007).

Here, the Mortgage specifically provided that the mortgagee had the option to purchase hazard insurance if Plaintiff failed to secure it, and to use the funds to pay down the mortgage if the destruction of the Property made it economically unfeasible to repair.   Thus, Vanderbilt had no obligation to protect Plaintiff's interest in the Property if there was a total destruction.   (Doc. No. 16, Ex. B at 4-5.)   Accordingly, Vanderbilt satisfied its obligation under the Mortgage and did not owe Plaintiff a duty once the Property was totally destroyed.   Consequently, Plaintiff's claim of a breach of fiduciary duty against WMC, MERS, and Vanderbilt will be dismissed.

## 2. HomeFirst Agency, Inc. ("HomeFirst") and Southwest Business Corporation ("SWBC") did not owe Plaintiff a Fiduciary Duty

Plaintiff fails to establish the existence of a fiduciary relationship with HomeFirst or SWBC.   HomeFirst and SWBC are not insurers.   (Doc. No. 20, Ex. E at 2.)   Plaintiff's only claim against HomeFirst and SWBC is that they are "insurance broker[s] . . . in relation to the insurance policy at issue." (Doc. No. 16 at ¶ 6.)   Viewing the facts in the light most favorable to Plaintiff, he fails to allege the existence of a fiduciary or even a direct relationship with HomeFirst or SWBC.   (<u>See generally</u>, Doc. No. 16.)   Merely stating that they are insurance

brokers is not sufficient to create such relationships.  As Defendant SWBC correctly notes in its

Memorandum of Law:

> Under Pennsylvania law, there is no duty of care owed by an insurance broker or agent to ensure that homeowners' insurance coverage is obtained on behalf of a third-party borrower.  See Acme-Hardesty Co., v. Wenger, 2003 WL 1847461 at *n.4 (Pa. C.P. 2003) ("Insurers, and insurance brokers, do not have a general affirmative social duty to undertake risk assessments and to provide insurance coverage to members of the public or their indemnitees with whom they have no other relationship.") and Sovereign Bank v. BJ's Wholesale Club, Inc., 395 F. Supp. 2d 183, 197 (M.D. Pa. 2005).  The duty of care owed by an insurance agent or broker is owed solely to the customer/insured, who retains their services to secure insurance on their behalf.

(Doc. No. 17-1 at 9.) See also Harold _ex rel._ Harold v. McGann, 406 F. Supp. 2d 562, 577 (E.D.

Pa. 2005) (dismissing plaintiff's claim for breach of fiduciary duty where plaintiff failed to plead

facts supporting the existence of a confidential relationship).  Therefore, the claim in Count I

against HomeFirst and SWBC for breach of fiduciary duty will be dismissed.

### 3.  American Modern Home ("AMH") did not owe Plaintiff a Fiduciary Duty

Plaintiff's breach of fiduciary duty claim against AMH fails because Pennsylvania law

ordinarily does not recognize the existence of a fiduciary duty arising in a first-party insurance

claim.  A first-party insurance claim involves the named policyholder bringing suit against the

insurance carrier.   Polito v. Continental Cas. Co., 689 F.2d 457, 459-60 (3d Cir. 1982).

Pennsylvania law only recognizes a fiduciary duty by an insurer to its insured in the context of a

third-party claim made under a liability insurance policy.  A third-party insurance claim involves

someone other than the policy holder bringing suit against the insurance carrier, such as an

injured passenger in motor vehicle accident.  See Daniel P. Fuss Builders-Contractors Inc. v.

Assurance Co. of Am., No. 06-1182, 2006 WL 2372226, at *1-3 (E.D. Pa. Aug. 11, 2006).  In

this regard:

17

> Under Pennsylvania law, a fiduciary duty . . . does not arise out of an insurance contract until an insurer asserts a stated right under the policy to handle all claims asserted against the insured.

See Keefe v. Prudential Prop. & Cas. Ins. Co., 203 F.3d 218, 227-28 (3d Cir. 2000); see also Hayes v. Am. Int'l Group, No. 09-2874, 2014 WL 3746813, at *18 (E.D. Pa. July 29, 2014) ("[A]n insurer does not have a fiduciary duty to an insured, except in limited circumstances such as where the insurer asserts a right to defend claims against the insured.").

Here, Plaintiff asserts that AMH breached its fiduciary to duty him in his capacity as an alleged beneficiary of the insurance policy, which is a first-party insurance claim. Under Pennsylvania law, this situation does not create a fiduciary relationship between Plaintiff and AMH. Keefe, 203 F.3d at 227-28 (there is no fiduciary duty for first-party insurance claims). Therefore, Plaintiff's claim for breach of fiduciary duty against AMH will be dismissed.

### C. Count II – Civil Conspiracy

In Count II, Plaintiff alleges that the "Mortgage Defendants [and the Insurance Defendants] combined to do an unlawful act (or used unlawful means) to deprive Plaintiff of the restoration and repair [insurance] proceeds." (Doc. No. 16 at ¶¶ 90, 92.)

Under Pennsylvania law, to establish a prima facie case of civil conspiracy, a plaintiff must first allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act by unlawful means or for an unlawful purpose; (2) an overt act done in furtherance of the common purpose; and (3) actual legal damage." General Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003); see also Skipworth by Williams v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 235 (Pa. 1997); see generally Sarpolis v. Teresheko, 625 F. App'x 594 (3d Cir. 2016). In order to adequately plead conspiracy:

> [t]he allegations must be sufficient to describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy.

Rose v. Bartle, 871 F.2d 331, 336 (3d Cir. 1989). "[P]roof of conspiracy must be made by full, clear and satisfactory evidence." Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. Ct. 2008).

Additionally, "[p]roof of malice is an essential part of a cause of action for conspiracy." Sarpolis, 625 F. App'x at 601 (citing Goldstein v. Philip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. Ct. 2004)). Malice is found where the conspirators act with the sole purpose of injuring the plaintiff without a justification. Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979). Malice is not found where there are facts establishing that the person acted for professional reasons and not solely to injure the plaintiff. Bro-Tech Corp. v. Thermax, Inc., 651 F. Supp. 2d 378, 419 (E.D. Pa. 2009).

### 1. The Mortgage Defendants did not Engage in Civil Conspiracy

Plaintiff fails to allege that WMC, MERS, and Vanderbilt engaged in a civil conspiracy against him. (Doc. No. 16 at ¶ 91.) The only evidence of alleged collusion between any of the Mortgage Defendants is the two assignments of the Mortgage. However, Plaintiff fails to plead plausible facts demonstrating that the assignments were for the sole purpose of injuring him. In fact, Plaintiff provides no evidence that these transactions were anything other than regular business dealings. No plausible unlawful means or purpose is alleged.

WMC executed the loan agreement with Plaintiff and designated MERS as its nominee. (Doc. No. 16, Ex. B at 2.) MERS, whose primary business function as noted by the Third Circuit is to transfer mortgage interests, assigned WMC's interest in the Mortgage to Vanderbilt.[18] Vanderbilt then insured its interest in the Property through a force-placed hazard insurance policy

---

[18] Montgomery Cnty. v. MERSCORP Inc., 795 F.3d 372, 374 (3d Cir. 2015); (Doc. No. 16, Ex. C at 2.)

on the Property when Plaintiff failed to do so.  (Doc. No. 16, Ex. F; Id. at ¶ 39.)  The Mortgage Defendants engaged in these acts for their own legitimate business reasons and not to harm Plaintiff.  No unlawful purpose or means has been plausibly alleged in the Amended Complaint by Plaintiff.

Moreover, Plaintiff has failed to plausibly allege that the Mortgage Defendants acted with malice.  As stated in Thompson Coal Co., malice cannot be established where the defendant acted for professional reasons.  412 A.2d at 472-73.   See Fleet Nat'l Bank v. Boyle, No. 04-1277, 2005 WL 2455673, at *12 (E.D. Pa. 2005) (dismissing a civil conspiracy claim where allegations demonstrated the defendant's actions were intended to advance their own business, and therefore, plaintiff could not establish requisite malice).  Here, Plaintiff fails to allege any facts that suggest the Mortgage Defendants acted contrary to their own legitimate business interests or with the sole intent to harm him.  (See generally, Doc. No. 16.)  For these reasons, Plaintiff fails to allege that WMC, MERS, or Vanderbilt acted with malice.  Accordingly, the civil conspiracy claim in Count II will be dismissed as to these Defendants.

### 2.  HomeFirst and SWBC did not Engage in Civil Conspiracy

Plaintiff also fails to sufficiently allege that the actions of HomeFirst and SWBC were part of an alleged conspiracy or that they acted with the sole intent to injure him.  Plaintiff alleges that "[t]he Insurance Defendants together with the Mortgage Defendants combined to do an unlawful act (or used unlawful means) to deprive Plaintiff of restoration and insurance proceeds."  (Doc. No. 16 at ¶ 92.)   However, as noted above, Plaintiff's only specific allegation regarding HomeFirst and SWBC is that they are "insurance broker[s] . . . in relation to the insurance policy at issue."  (Id. at ¶ 6.)  Plaintiff does not assert any specific unlawful actions taken by HomeFirst and SWBC in connection with the alleged conspiracy.

In addition, Plaintiff fails to assert that HomeFirst and SWBC acted with the sole intent to injure Plaintiff.   Again, as Plaintiff admits, HomeFirst and SWBC are merely "insurance broker[s]." (Doc. No. 16 at ¶ 6.)  The only action taken by HomeFirst and SWBC was facilitating the purchase of the force-placed hazard policy.   (Id. at ¶ 40.)   HomeFirst and SWBC were therefore acting pursuant to their normal business interests.   No plausible claim of malice is alleged in the Amended Complaint.   Accordingly, the civil conspiracy claim in Count II against HomeFirst and SWBC will be dismissed.

### 3. American Modern Home did not Engage in Civil Conspiracy

Plaintiff also does not plausibly allege that AMH acted with the sole intent to injure Plaintiff through an unlawful means or with an unlawful purpose.  Plaintiff merely alleges that AMH sent the insurance proceeds to Vanderbilt instead of disbursing the funds to him.  (Doc. No. 16 at ¶ 92.)   Here, AMH's only action was properly paying the insurance proceeds to Vanderbilt, the only named payee on the insurance policy.  (Doc. No. 20, Ex. D at 2.)  When AMH paid the insurance proceeds, it was doing what it was contractually obligated to do.  AMH was acting in its own legitimate business interest by honoring the terms of the force-placed hazard policy.  Thus, viewing the facts alleged in the light most favorable to Plaintiff, he fails to plead any facts showing that AMH acted with malice toward him or engaged in an unlawful means to pursue an illegal purpose. (Doc. No. 16 at ¶¶ 10-85.)  As a result, Plaintiff fails to state a plausible claim for civil conspiracy against AMH in Count II.

### D.  Count III – Breach of Contract

In Count III, Plaintiff alleges the Mortgage Defendants breached the mortgage contract "by misappropriating the restoration and repair proceeds, . . . by not paying taxes from escrow, and by making material misrepresentations concerning the authorization to do such acts."  (Doc.

No. 16 at ¶ 95).  In addition, Plaintiff alleges the Insurance Defendants breached the insurance agreement by giving the proceeds to Vanderbilt and by enabling Vanderbilt to become the sole beneficiary of the policy.  (Id. at ¶ 96.)

To establish a breach of contract claim:

Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."

Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  "It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract."  Electron Energy Corp v. Short, 597 A.2d 175, 177 (Pa. Super. Ct. 1991), aff'd, 618 A.2d 395 (1993).

### 1. Vanderbilt did not Breach its Contract with Plaintiff

Plaintiff claims that Vanderbilt breached its mortgage contract by using the insurance proceeds to protect its own interest in the Property.  (Doc. No. 16 at ¶ 95.)  Plaintiff was not entitled to the insurance proceeds because the mortgage did not require the force-placed hazard policy to cover him if there was a total loss of the Property.  In addition, the funds were properly used under the terms of the policy to pay down the mortgage.

The Mortgage required Plaintiff to place hazard insurance on his Property.  (Doc. No. 19, Ex. B at 6-7) ("Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire . . .").)  Plaintiff admits that he failed to obtain fire insurance for the house and as a result, Vanderbilt obtained an insurance policy to protect itself in

accordance with the terms of the Mortgage.[19]   (Doc. No. 16 at ¶ 39.)   When the fire loss

occurred, the insurer, American Modern Home, paid the insurance proceeds to Vanderbilt, who

used the funds to satisfy in part its own interest in the Property.

>   Vanderbilt's actions were expressly authorized by the Mortgage:
>
>   In the event of loss, Borrower shall give prompt notice to insurance carrier and
>   Lender.   Lender may make proof of loss if not made promptly by Borrower.
>   Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,
>   whether or not the underlying insurance was required by Lender, shall be applied
>   to restoration or repair of the Property, if the restoration or repair is economically
>   feasible and Lender's security is not lessened . . .   If the restoration or repair is not
>   economically feasible or Lender's security would be lessened, the insurance
>   proceeds shall be applied to the sums secured by this Security Instrument,
>   whether or not then due, with the excess, if any, paid to Borrower . . .

(Doc. No. 19, Ex. B at 6-7).   Accordingly, because there was a total loss of the Property making

it economically unfeasible to restore and repair, Vanderbilt acted within the terms of the

Mortgage by using the proceeds to pay down the mortgage.   This use did not constitute a breach

of the Mortgage contract.

>   Furthermore, Vanderbilt's actions are not inconsistent with the law regarding force-placed

insurance policies.   See Montanez v. HSBC Mortgage Corp. (USA), 876 F. Supp. 2d 504, 508

(E.D. Pa. 2012) (observing that "[t]he purpose of force-placing insurance is to protect the

lender's security interest in the property in the event the borrower fails to insure the property

adequately.").   Accordingly, Vanderbilt acted within the terms of the Mortgage and did not

breach it.  Plaintiff's claim for breach of contract against Vanderbilt will be dismissed.[20]

---

[19] Section 5 of the Mortgage provides: "Lender is under no obligation to purchase any particular
type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might
not protect Borrower, Borrower's equity in the Property . . ."  (Doc. No. 19, Ex. B at 6-7.)

[20] The allegations in the Amended Complaint do not support a claim that the Mortgage
Defendants were under a contractual obligation to escrow and pay real property taxes from

### 2.  WMC and MERS did not Breach a Contract with Plaintiff

Plaintiff's claims of breach of contract against WMC and MERS will be dismissed because they were not in a contractual relationship with Plaintiff at the time of the fire loss. First, WMC did not have an interest in the Mortgage at the time of the fire loss.  At the time of the loss, the Mortgage had been transferred to Vanderbilt.  Therefore, WMC had no relationship with Plaintiff under a contract.  In the absence of a contractual relationship, no breach of contract claim can exist.  See Electron Energy Corp., 597 A.2d at 178 (holding that a party was not liable for breach of contract because he was not a party to the contract).

Second, MERS had no contractual relationship with Plaintiff at the time of the fire loss. On June 22, 2011, MERS, in its nominee capacity for WMC, assigned all its right, title, and interest in the Mortgage to Vanderbilt Mortgage and Finance, Inc.  (Doc. No. 16, Ex. B at 2.) Therefore, when the fire loss occurred, MERS had no contractual relationship with Plaintiff.[21]  In the absence of a contractual relationship, MERS did not breach the terms of the contract.  See

---

escrowed funds.   Moreover, the allegations do not plausibly show that material misrepresentations were made about escrowing and paying the real property taxes.

[21] Plaintiff alleges that one or both assignments were deficient or defective and did not transfer any rights to Vanderbilt.  However, Plaintiff does not have proper standing to challenge the validity or effectiveness of the assignments.  See Dixon v. Stern & Eisenberg, PC, No. 5:14-cv-4551, 2015 WL 3833782 at *11 (E.D. Pa. June 19, 2015) (holding that a borrower lacks standing to challenge the validity of an assignment of mortgage); Potoczny v. Aurora Loan Servs., LLC, 33 F. Supp. 3d 554, 566 n.18 (E.D. Pa. 2014) (concluding that the debtor lacked standing to contest the validity of the assignment "[b]ecause any payments made to the holder of the note will discharge a debtor's liability under the note, the debtor cannot be harmed by paying the holder, even if the holder failed to comply with certain transfer requirements").

Additionally, it is irrelevant which of the two assignments effectively transferred the rights in the Mortgage from MERS, as nominee, to Vanderbilt.   Regardless which assignment transferred the rights with respect to the Mortgage, Vanderbilt was the holder of the Mortgage at the time of the alleged fire loss and at the time the insurance proceeds were distributed. Moreover, Vanderbilt was the named insured on the Policy.

Electron Energy Corp., 597 A.2d at 178.  Accordingly, Plaintiff's breach of contract claims against WMC and MERS will be dismissed.

### 3.  HomeFirst and SWBC did not have a Contract with Plaintiff

Plaintiff's breach of contract claim against HomeFirst and SWBC fails because they were not parties to the insurance contract.  They did not provide the insurance and were not the named insureds.[22]  (Doc. No. 16 at ¶ 97.)  According to Plaintiff, HomeFirst and SWBC were merely "insurance broker[s]."  (Id. at ¶ 6.)  Consequently, HomeFirst and SWBC cannot be liable for breach of contract when they were not parties to the insurance contract and had no contractual relationship with Plaintiff.   See, e.g., Reeves v. Middletown Ath. Ass'n, 866 A.2d 1115, 1125 (Pa. Super. Ct. 2004) ("It is undisputed that a written contract did not exist . . . [the plaintiff] cannot prevail on a breach of contract claim because no contract existed . . .").   For this reason, Plaintiff's breach of contract claim against HomeFirst and SWBC will be dismissed.

### 4.  AMH did not have a Contract with Plaintiff

Plaintiff's claim for breach of contract against AMH also will be dismissed because he did not have a contractual relationship with AMH.  The Evidence of Insurance form states that the insured under the policy agreement was Vanderbilt, not Plaintiff.  (Doc. No. 19, Ex. D at 4.) Even if Plaintiff is considered a party to the insurance contract as a beneficiary, AMH did not breach the insurance contract because it had the right under its terms to pay the proceeds to Vanderbilt.  (Doc. No. 20, Ex. D at 2.)  For these reasons, Plaintiff's claim for breach of contract against AMH will be dismissed.  See, e.g., Reeves, 866 A.2d at 1125.

---

[22] The Policy describes American Modern Home as the insurance provider and Vanderbilt as the insured.  (See Doc. No. 19, Ex. D at 4.)

**E.  Count IV – Breach of Duty of Good Faith and Fair Dealing[23]**

Plaintiff alleges a breach of the duty of good faith and fair dealing as follows:

The mortgagee defendants breached the mortgage contract (i.e. the security document) by misappropriating the restoration and repair proceeds and by not paying the taxes from escrow and by making material misrepresentations concerning the authorization to do such acts.  The mortgagee defendants also breached the contract by wrongfully accelerating the loan repayment schedule and by characterizing the satisfaction as a charge off.  To the extent that no express contract is found between Plaintiff and any of the mortgage defendants (or their respective principles in agency), Plaintiff asserts that those defendants maintain a common law duty to act in good faith which was violated . . . [24]

(Doc. No. 16 at ¶ 99.)

The claim of not acting in good faith and not dealing fairly cannot proceed against Defendants because based on the facts pled, Defendants acted properly and did not breach any duty of good faith or fair dealing.  Defendants did not misappropriate the insurance proceeds or make material misrepresentations about their right to the proceeds and payment of taxes from escrow.[25]  Moreover, Defendants never accelerated loan repayments from Plaintiff, and characterizing the satisfaction of the loan as a charge-off was proper.  It was unlikely that Plaintiff would continue to pay the Mortgage to reduce the outstanding debt after the insurance proceeds were applied, and Vanderbilt forgave the payment of the balance of the Mortgage by

---

[23]  This count only names WMC, MERS, Vanderbilt, HomeFirst, SWBC, and AMH as defendants.  MERSCORP Holding, Inc. is not named as a defendant.

[24]  It appears that Plaintiff is alleging the claim of breach of duty of good faith and fair dealing as an alternative to his breach of contract claim because "Pennsylvania law does not recognize a separate claim for breach of implied covenant of good faith and fair dealing" when the allegations that support the bad faith claim are the same ones that support a breach of contract claim.  Sayre v. Customers Bank, No. 14-3740, 2015 WL 3458790, at *14 (E.D. Pa. May 29, 2015) (citing Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 400-01 (E.D. Pa. 2002)).

[25]  The claim involving "material misrepresentations" is covered infra in Section F (Count V-Negligent Misrepresentation/Fraud).

26

Plaintiff.  Using the term charge-off to characterize this situation was not an act of bad faith. Accordingly, Count IV alleging a breach of good faith and fair dealing against all Defendants will be dismissed.

### F.  Count V – Negligent Misrepresentation/Fraud[26]

In Count V, Plaintiff claims that the "Mortgage Defendants negligently and/or fraudulently mischaracterized the terms of the security agreement and the terms of the insurance policy to justify their illegal retention of the proceeds."  (Doc. No. 16 at ¶ 103.)  While Plaintiff groups misrepresentation and fraud together, they are separate causes of action.   However, because each claim requires Plaintiff to plead a misrepresentation and Plaintiff fails to do so, they will be addressed together.

To state a claim for negligent misrepresentation, a plaintiff must allege: "(1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation."   Bilt-Rite Contractors, Inc. v. Architectural Studio, 866 A.2d 270, 277 (Pa. 2005).  Similarly, the elements for a fraudulent misrepresentation are:

> (1) a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) a resulting injury proximately caused by the reliance.

Patel v. Patel, No. 14-5845, 2016 WL 3000821, at *12-13 (E.D. Pa. May 25, 2016) (citing Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa., 7 A.3d 278, 290 (Pa. Super. Ct. 2010)).

---

[26] Plaintiff makes this claim against WMC, MERS, and Vanderbilt only.

**1. Vanderbilt did not Misrepresent the Terms of the Mortgage or Insurance Coverage**

Plaintiff's misrepresentation and fraud claims against Vanderbilt fail because the Amended Complaint does not plausibly establish that Vanderbilt misrepresented to him the terms of the Mortgage or the insurance policy issued by AMH.   Plaintiff's allegations of misrepresentation relate to Vanderbilt's August 13, 2014 letter sent to Plaintiff after he filed a complaint with the Consumer Financial Protection Bureau.  (Doc. No. 16 at ¶ 56, 61.)  In the letter, Vanderbilt used language that covered the terms of the mortgage and insurance policy.[27]

---

[27] The August 13, 2014 letter from Vanderbilt states:

> The Mortgage states: [T]he Lender may, but is not obligated to, obtain and pay insurance coverage on behalf of the customer in order to protect their security interest in the Property when sufficient insurance coverage has not been maintained or proof of such coverage has not been provided to the Lender.  This coverage may or may not protect the Borrower, their equity in the Property, or contents of said Property, and the cost of this insurance may exceed the cost of similar insurance coverage the Borrower could obtain on their own.  Furthermore, the amounts disbursed by Lender would be considered as additional debt of the Borrower and secured by the Mortgage.

> VMF [Vanderbilt] was not required to obtain insurance coverage at all, much less insurance that would have protected your interest in the Property.

(Doc. No. 16, Ex. N at 2.)  As previously noted, the Mortgage provides:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(Doc. No. 16, Ex. N at 2.)  The Mortgage expressly authorized Vanderbilt to purchase a force-placed insurance policy to protect its own financial interest in the Property.[28]  (Doc. No. 19, Ex. B at 6.)  No material misrepresentation was made in this letter.  Therefore, Plaintiff's claim for negligent misrepresentation and fraud will be dismissed against Vanderbilt.

### 2.   WMC and MERS did not Misrepresent the Terms of the Mortgage

Plaintiff fails to plausibly allege in the Amended Complaint a misrepresentation made by WMC or MERS to Plaintiff regarding the Mortgage.  (Doc. No 16 at ¶¶ 10-104.)  The only representation made by WMC, MERS, or Vanderbilt about the terms of the Mortgage stem from allegations concerning Vanderbilt.  WMC and MERS are not alleged to have been the subject of Plaintiff's complaint to the CFPB.  Plaintiff has not pled statements by WMC or MERS that were misrepresentations.  In the absence of a specific misrepresentation, Plaintiff's claim is not legally cognizable.  See Progress Federal Savings Bank v. Lenders Ass'n, Inc., No. 94-7425, 1995 WL 94788, at * 2 (E.D. Pa. Mar. 6, 1995) (granting defendant's motion to dismiss on a claim of misrepresentation for failure to allege a specific misrepresentation made by the defendants to the plaintiff).  Therefore, Plaintiff's claims for negligent misrepresentation and fraud against WMC and MERS will be dismissed.

---

(Doc. No. 19, Ex. B at 6.)  While the language used in the letter does not exactly track the language in the Mortgage, viewing it in the light most favorable to Plaintiff, it does not substantively diverge from the terms of the Mortgage.

[28] As noted, in relevant part, the Mortgage states:

Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.

(Doc. No. 19, Ex. B at 6.)

### G.  Count VI – Unjust Enrichment

Sixth, Plaintiff alleges as his unjust enrichment claim that "[t]he Mortgage Defendants received a benefit from the insurance proceeds . . . [and] also received a benefit from the interest payments paid by [Plaintiff] under the terms of the security document."  (Doc. No. 16 at ¶ 106.) Plaintiff further alleges that "[t]he Insurance Defendants received a benefit from the insurance premiums."  (Id. at ¶ 107.)  The elements necessary to prove unjust enrichment are:

> (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value . . . The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

Durst v. Milroy Gen Contracting, Inc., 52 A.3d 357, 360 (Pa. Super. Ct. 2012) (quoting Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. Ct. 1995)).  The doctrine of unjust enrichment is "inapplicable when the relationship between parties is founded on a written agreement or express contract."  Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013) (stating that Pennsylvania law precludes a claim for unjust enrichment where the relationship between the parties is based on a written contract); Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448-49 (Pa. 1969).

### 1.  The Mortgage Defendants were not Unjustly Enriched

Plaintiff's claim for unjust enrichment fails against WMC, MERS, and Vanderbilt because his claims are based on written contracts, the Mortgage and the insurance policy.  As the Pennsylvania Supreme Court has held and this Court has recognized, the doctrine of unjust enrichment is "inapplicable when the relationship between parties is founded on a written agreement or express contract."  Benner, 917 F. Supp. 2d at 360; Schott, 259 A.2d at 448-49.

Additionally, Plaintiff's claims against WMC and MERS fails because WMC and MERS were never in possession of the insurance proceeds.  (Doc. No. 16 at ¶¶ 10-110.)    The proceeds were paid to Vanderbilt and WMC and MERS were never enriched by the proceeds at all.  For these reasons, Count VI will be dismissed against WMC, MERS, and Vanderbilt.

### 2.  HomeFirst and SWBC were not Unjustly Enriched

Plaintiff fails to establish that any benefit was unjustly conferred upon HomeFirst or SWBC.    Instead, Plaintiff claims "[t]he Insurance Defendants received a benefit from the insurance premiums."  (Doc. No. 16 at ¶¶ 107-110.)  Here, HomeFirst and SWBC were brokers who placed the insurance for Vanderbilt with AMH.  Apparently, they were paid for their services as brokers in placing the insurance and did not receive proceeds from the insurance claim.  As a result, Plaintiff's claim that HomeFirst, and SWBC were unjustly enriched is without merit.

### 3.  AMH was not Unjustly Enriched

Plaintiff fails to plausibly explain in the Amended Complaint how AMH was unjustly enriched.  AMH's sole source of enrichment in this case was the Policy premiums paid by Vanderbilt.  Viewing the facts in the light most favorable to Plaintiff, he fails to plead how AMH, while acting within the normal course of its business as an insurer, received an unjust benefit.  AMH was paid for services rendered and properly paid the insurance proceeds to Vanderbilt after the fire loss.  For this reason, Plaintiff's claim for unjust enrichment against AMH also fails.

## H.  Count VII –  Trust Liability/Bailment[29]

### 1.  Constructive Trust

There are no plausible allegations that the Mortgage Defendants were unjustly enriched and therefore Plaintiff's request for an imposition of a constructive trust will be dismissed.  In Count VII, Plaintiff alleges the "Mortgage Defendants received the insurance proceeds to hold

---

[29] Only WMC, MERS, and Vanderbilt are named in Count VII.

for a particular purpose (i.e. restoration & repair).   A demand for those proceeds was made repeatedly by Plaintiff and denied by the Mortgage Defendants."   (Doc. No. 16 at ¶ 112.) Plaintiff additionally asserts that the "[e]ven without an express provision [to hold the insurance proceeds], a constructive trust exists."   (Id. at ¶ 113.)  Essentially, Plaintiff is arguing that the Mortgage Defendants owed him the proceeds of the insurance contract because a constructive trust existed.

        "A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."  Pierro v. Pierro, 264 A.2d 692, 696 (Pa. 1970).  Under Pennsylvania law, a constructive trust works in tandem with unjust enrichment, and for a constructive trust to be plausible, the elements of unjust enrichment must be adequately pled.  Kern v. Kern, 892 A.2d 1, 8-9 (Pa. Super. Ct. 2005); Shepley v. Dobbin, 505 A.2d 327, 330 (Pa. Super. Ct. 1986) ("Equity will impose a constructive trust under appropriate circumstances.  However, our case law is exigent in demanding evidence of unjust enrichment before a trust will be created."). Essentially, without a properly pled argument for unjust enrichment, there can be no argument for a constructive trust against the Mortgage Defendants.

        Plaintiff's claim for imposing a constructive trust is unpersuasive.  As noted above, under Pennsylvania law, constructive trusts work in tandem with unjust enrichment claims.  For a constructive trust to be imposed, the elements of unjust enrichment must be adequately alleged. Kern, 983 A.2d at 8-9; Shepley, 505 A.2d at 330.  As previously determined, Plaintiff's claim against the Mortgage Defendants for unjust enrichment is deficient because the claim is based on a written contract.   Because a written contract exists, no constructive trust can be created. Moreover, no plausible allegation that the Mortgage Defendants have been unjustly enriched has

32

been set forth in the Amended Complaint.  Accordingly, Plaintiff's request for an imposition of a constructive trust on WMC, MERS, and Vanderbilt will be dismissed.

### 2.  Bailment

No bailment was created with Vanderbilt because the insurance contract entitled Vanderbilt to the insurance proceeds.

In <u>Lear v. Eddy</u>, the Pennsylvania Superior Court found that:

> A bailment is a delivery of a personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with it according to his directions or kept until he reclaims it.

749 A.2d 971, 973 (Pa. Super. Ct. 2000) (quoting <u>Price v. Brown</u>, 680 A.2d 1149, 1151-52 (Pa. 1996)).  Plaintiff asserts that the "Mortgage Defendants received the insurance proceeds to hold for a particular purpose (i.e. restoration & repair)," and these funds should have been turned over to him.  (Doc. No. 16 at ¶ 111.)  Plaintiff, however, fails to allege any facts showing that WMC or MERS received any insurance proceeds, the subject of the bailment.  Second, no bailment was created with Vanderbilt because the insurance contract entitled Vanderbilt to receive the insurance proceeds.  Based on the plain language of the Mortgage and the Policy, Vanderbilt was legally entitled to the proceeds as the named insured.  Since the Property was totally destroyed, Vanderbilt was entitled to apply the proceeds to the amount due under the mortgage it held.[30] Therefore, Plaintiff's claim for a bailment will be dismissed.

---

[30] As noted, the Mortgage states:

> Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.

(Doc. No. 19, Ex. B at 6.)

**I.  Count VIII –Diminution in Value and Waste[31]**

Count VII of the Amended Complaint alleges that the Mortgage Defendant's "misappropriation of the insurance proceeds resulted in diminution in value and waste of real property."  (Doc. No. 16 at ¶¶ 116-17.)

Under Pennsylvania law, diminution in value is a measure of damages.  Centolanza v. Leigh Valley Diaries, Inc., 658 A.2d 336, 338 (Pa. 1995) (stating that the trial court properly determined that the plaintiff's claim for diminution in value of property is a "claim for damages and not [a] cause of action.")  Therefore, no claim can be asserted against any Defendant for diminution in value of the real estate as a cause of action.  Id.

To establish a cause of action for waste, a plaintiff must prove: "an act constituting waste, done by one legally in possession of the property, prejudicial to the estate or interest of another." Versatile Metals, Inc. v. Union Corp., No. 85-4085, 1985 WL 47, at *1 (E.D. Pa. Dec. 9, 1985). Here, Plaintiff does not plausibly allege in the Amended Complaint the requisite elements of a waste cause of action against the Mortgage Defendants.  The Amended Complaint contains no specific or plausible allegations that WMC, MERS, or Vanderbilt were in possession of the Property at the time of the fire loss.  Plaintiff possessed the Property at the time.  After the fire, the receipt and use of the insurance proceeds by Vanderbilt does not amount to waste because the funds were properly used as discussed above.  Accordingly, the Court will dismiss Plaintiff's claim for diminution and waste against the Mortgage Defendants.

---

The "Evidence of Insurance" document specifically states: "Insured/Lender Name & Address VANDERBILT MORTGAGE & FINANCE PO BOX 9800 MARYVILLE, TN 37802."

(Doc. No. 19, Ex. D at 4.)

[31] This claim pertains only to WMC, MERS, and Vanderbilt.

**J.   Count IX – Conversion, Theft, and Misappropriation**

In Count IX, Plaintiff alleges that the "mortgage defendants misappropriated the insurance proceeds; the misappropriation represents a conversion . . .  and theft as contemplated by 18 Pa. C.S. § 1821, <u>et seq.</u>"  (Doc. No. 16 at ¶¶ 120-22.)

**1.   The Claim of Conversion of the Insurance Proceeds by the Mortgage Defendants is Without Merit**

Plaintiff's claim for conversion is also without merit.  In Pennsylvania, "[c]onversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification."  <u>Pittsburgh Const. Co v. Griffith</u>, 834 A.2d 572, 581 (Pa. Super. Ct. 2003).  To establish conversion, the plaintiff must establish that the defendant wrongfully took property from the plaintiff.  <u>Id.</u>

**a.   WMC and MERS**

Here, Plaintiff cannot establish that WMC or MERS wrongfully took Property from him.  Plaintiff broadly states that "[t]he Mortgage Defendants misappropriated the insurance proceeds."  (Doc. No. 16 at ¶ 120.)  Plaintiff fails to allege that either WMC or MERS were in possession of the insurance proceeds at any time.  The only party that ever received the insurance proceeds is Vanderbilt.  Accordingly, Plaintiff's claim for conversion against WMC and MERS in Count IX will be dismissed

**b.   Vanderbilt**

Plaintiff's claim for conversion against Vanderbilt in Count IX also will be dismissed for two reasons.  First, Vanderbilt did not convert the insurance proceeds.  As noted previously, the allegations show that Vanderbilt had a right to the proceeds and Plaintiff's consent was not necessary.  Second, Plaintiff's claims are barred by the gist of the action doctrine.  "[W]here the

success of a conversion claim depends entirely on the [parties'] obligations as defined by a contract, the gist of the action doctrine applies." <u>Patel v. Patel</u>, No. 14-5845, 2016 WL 3000821, at *4 (E.D. Pa. May 25, 2016).   The gist of the action doctrine precludes plaintiffs from re-casting a breach of contract claim as a tort claim.  <u>Id.</u> (citing <u>Hart v. Arnold</u>, 884 A.2d 316, 339 (Pa. Super. Ct. 2005)).  In <u>Bruno v. Erie Insurance Exchange</u>, the Pennsylvania Supreme Court explained:

> [The] substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort . . . is not controlling.  If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract . . .  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

106 A.3d 48, 68 (Pa. 2014).

Here, Plaintiff's claim is essentially based on Vanderbilt obtaining and retaining possession of the insurance proceeds under the terms of the Mortgage and the Insurance Policy. Thus, the particular facts of the claim "establish that the duty is one created by the parties by the terms of their contract." <u>Id.</u> at 68.   Therefore, Plaintiff's claim for conversion against Vanderbilt is precluded by the gist of the action doctrine and for this additional reason will be dismissed.

### 2.  Plaintiff's Claim of Criminal Theft Also Fails

Plaintiff further asserts that the WMC, MERS, and Vanderbilt committed "theft" in violation of "18 Pa C.S. § 1821."  (Doc. No. 16 at ¶ 122.)  Title 18 of Pennsylvania Statutes, which primarily sets forth criminal violations in this Commonwealth, does not contain a provision "C. S. § 1821."  But even if Plaintiff meant to cite to the proper criminal provision for theft, 18 Pa. Const. Stat. Ann. § 3921, his claim could not proceed because a criminal statute of

general applicability does not create a private right of action.  Agresta v. Goode, 797 F. Supp. 399, 409 (E.D. Pa. 1992); D'Errico v. DeFazio, 763 A.2d 424, 429-30 (Pa. Super. Ct. 2000). Accordingly, Plaintiff's claims against all Mortgage Defendants regarding theft will be dismissed.

### 3.  The Claim of Misappropriation of the Insurance Proceeds is Without Merit

In Pennsylvania, a claim for misappropriation arises in the context of trade secrets.  See 12 Pa. Const. Stat. Ann. § 5302 (2012) (defining misappropriation as cause of action for the improper acquisition of trade secrets); see also Felmlee v. Lockett, 351 A.2d 273, 278 (Pa. 1976) (discussing a misappropriation claim in the context of trade secrets); Sorbee Int'l, Ltd. v. Chubb Customs Ins. Co., 735 A.2d 712, 716 (Pa. Super. Ct. 1999) (discussing misappropriation claim in the context of trade secrets).  Plaintiff has not alleged any facts or claims that would suggest that this case involves trade secrets.  Therefore, Plaintiff's claim for misappropriation will be dismissed.

### K.  Count X – Consumer Law Violations

In Count X, Plaintiff asserts numerous violations of consumer protection statutes against the Mortgage Defendants.  (Doc. No. 16 at ¶¶ 124-27.)  The Court will review each in turn.

### 1.  The Mortgage Defendants did not Violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

First, Plaintiff asserts a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") against all Mortgage Defendants.  73 Pa. Const. Stat. Ann. § 201-1.  To bring a private cause of action under the Unfair Trade Practices and Consumer Protection Law (UTPCPL), a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.  Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004).

Plaintiff's Amended Complaint here fails to plausibly allege a violation of UTPCPL against all Mortgage Defendants.  Initially, Plaintiff does not allege that WMC or MERS made a representation about the terms of the mortgage.  (Id.)  Plaintiff's only allegations regarding a misrepresentation are tied to the letter sent by Vanderbilt to Plaintiff, dated August 13, 2014. (Doc. No. 16, Ex. N at 2.)  As discussed above, the representations made to Plaintiff by Vanderbilt in its August 13, 2014 letter to Plaintiff are consistent with the terms of the Mortgage. Moreover, Plaintiff does not suggest that he relied upon the letter to his detriment.  Thus, Plaintiff fails to allege a proper claim under the UTPCPL against WMC, MERS, or Vanderbilt.

## 2.  The Pennsylvania Fair Credit Extension Uniformity Act ("PFCEUA") Claim Will Be Dismissed

Plaintiff's claim for violation of the Pennsylvania Fair Credit Extension Uniformity Act ("PFCEUA") against the Mortgage Defendants fails.  Private actions for violation of the PFCEUA are enforceable in private actions under the UTPCPL.  They cannot be brought as a separate cause of action under the PFCEUA.  See Parker v. Nationstar Mortgage LLC, No. 2:15-cv-874, 2015 WL 6472223, at *8 (W.D. Pa. Oct. 27, 2015) (finding that "FCEUA violations are enforceable in private actions brought under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL).").  For this reason, the PFCEUA claim will be dismissed.

## 3.  The Mortgage Defendants did not Violate the Fair Debt Collection Practices Act ("FDCPA")

Next, Plaintiff claims the Mortgage Defendants violated of the Fair Debt Collection Practices Act ("FDCPA").   15 U.S.C. § 1692 (2012).  The FDCPA's purpose is to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged . . ." 15 U.S.C. § 1692a(e).

38

> To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a "debt" as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.

Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014).  Under the FDCPA, a "debt collector" is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

Plaintiff's claim fails against WMC, MERS, and Vanderbilt because they are not debt collectors under the meaning of the statute.  First, WMC and MERS never attempted to collect a debt from Plaintiff and therefore cannot be debt collectors.  Second, although Plaintiff owed Vanderbilt payments for the Mortgage, Vanderbilt is not considered a debt collector.  A party acting to collect on a debt owed directly to it is not a debt collector under the statute.  Estate of Coles v. Zucker, Goldberg & Ackerman, 658 F. App'x 105, 111 (3d Cir. 2016) (holding that a mortgage holder succeeding to the rights of the originating lender is not a "debt collector" under the "originator exemption" set forth in 15 U.S.C. § 1692a(6)(F)(ii)); Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000) ("Creditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA.").  Therefore, Plaintiff's claim against WMC, MERS, and Vanderbilt for violation of the FDCPA will be dismissed.

### 4. Plaintiff does not Plausibly Allege a Violation of the Federal Fair Credit Reporting Act

Plaintiff claims a violation of the Federal Fair Credit Reporting Act ("FFCRA") against the Mortgage Defendants.  Plaintiff does not identify the specific violation of FFCRA, but rather alleges a blanket violation of "15 U.S.C.A. § 1601 et seq."  But most importantly, Section 1682s-

2(a) does not afford a citizen a private right of action.   SimmsParris v. Countrywide Fin. Corp.,

652 F.3d 355, 358 (3d Cir. 2011) (stating that claims for a violation of 15 U.S.C. § 1681s-2(a) are

only available to the government).   Because Plaintiff is an individual, he has no claim under the

FFCRA.   Consequently, this claim will be dismissed against WMC, MERS, and Vanderbilt.

### 5.   Plaintiff does not Plausibly Allege a Violation of the Real Estate Settlement Procedures Act

Plaintiff alleges all Mortgage Defendants violated the Real Estate Settlement Procedures

Act ("RESPA").   12 U.S.C. § 2601 (2012).   Plaintiff does not point to the specific provision of

RESPA he claims that the Mortgage Defendants violated.   Rather, Plaintiff asserts a general

claim that all Mortgage Defendants engaged in "illicit methods of servicing the loan."   (Doc. No.

16 at ¶ 125.)   By doing so, Plaintiff asserts no more than mere conclusory allegations, and does

not satisfy the pleading standard.   Accordingly, Plaintiff's claim for violation of RESPA against

WMC, MERS, and Vanderbilt will be dismissed.

### 6.   The Mortgage Defendants did not Accelerate Plaintiff's Loan under Pennsylvania Code Section 31.203(a)

Plaintiff also contends that the Mortgage Defendants violated 12 Pa. Code § 31.203(a) by

accelerating the Mortgage without notice.   (Doc. No. 16 at ¶ 126.)   Section 31.203(a) covers the

obligation of a mortgagee to provide notice to a borrower before accelerating a mortgage loan.

12 PA. CODE § 31.203(a).   Acceleration of a loan occurs when the lender notifies the borrower

that the entire unpaid balance of a loan is immediately due.   In re Energy Future Holdings Corp.,

842 F.3d 247, 259 (3d Cir. 2016).

Here, Plaintiff does not plead that any of the Mortgage Defendants accelerated the loan.

Rather, he asserts that insurance proceeds were used to satisfy Vanderbilt's interest in the

Property.   (Doc. No. 16 at ¶ 55.)   Viewing these facts in the light most favorable to Plaintiff, this

application of the insurance proceeds does not constitute an acceleration of the Mortgage. Furthermore, 12 Pa. Code § 31.203 does not provide Plaintiff with relief because it does not establish a private right of action.  See 12 Pa. Code § 31.203.  It is merely an administrative provision on the proper notice that must be given before a lender accelerates a loan and foreclosure.  Therefore, Plaintiff's claim that the Mortgage Defendants violated 12 Pa. Code § 31.203(a) will be dismissed.

### 7.  The Mortgage Defendants did not violate the Pennsylvania Usury Law

Plaintiff also claims that the Mortgage Defendants violated Pennsylvania's usury law. See 4 Pa. Const. Stat. Ann. § 502.  The law provides:

> A person who has paid a rate of interest for the loan or [the] use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges.

Id.  Plaintiff contends that the Mortgage Defendants "had no entitlement to collect interest payments when they had elected to disregard their respective obligations in the security document." (Doc. No. 16 at ¶ 127.)  Plaintiff's claim cannot stand under the usury law because Plaintiff does not contend that the rate of interest associated with the Mortgage was in excess of the rate permitted by statute.  Moreover, no plausible allegations show that these Defendants disregarded any of their written obligations.  Accordingly, Plaintiff's claim that the Mortgage Defendants violated Pennsylvania's usury law will be dismissed.

### L.  Count XI – Negligence Per Se[32]

Finally, Plaintiff alleges that the "violation of any of the aforementioned statutes constitutes negligence per se." (Doc. No. 16 at ¶ 130.)  The Pennsylvania Supreme Court found that:

---

[32] Count XI pertains only to WMC, MERS, and Vanderbilt.

41

> In order to prove a claim based on negligence *per se,* the following four
> requirements must be met: (1) The purpose of the statute must be, at least in part,
> to protect the interest of a group of individuals, as opposed to the public
> generally; (2) The statute or regulation must clearly apply to the conduct of the
> defendant; (3) The defendant must violate the statute or regulation; and (4) The
> violation of the statute or regulation must be the proximate cause of the plaintiff's
> injuries.

Ramalingam v. Keller Williams Realty Grp., Inc., 121 A.3d 1034, 1042-43 (Pa. 2015).  As noted

above, Plaintiff's claims regarding violations of the consumer protection statutes are insufficient

to constitute viable causes of action.  Thus, Count XI for negligence per se against the Mortgage

Defendants will be dismissed.

## V.      AMENDING THE AMENDED COMPLAINT WOULD BE FUTILE

Even though Plaintiff has not requested that he be granted leave to amend his Amended

Complaint, the Court will not grant him leave to amend because doing so would be futile.

"Leave to amend should be freely given when justice so requires, including for a curative

amendment unless such an amendment would be inequitable or futile."  Free Speech Coalition,

Inc. v. Attorney General of United States, 677 F.3d 519, 545 (3d Cir. 2012).  A complaint may

be dismissed without leave to amend when it is "clear from the face of the complaint that the

deficiencies cannot be cured."  Turner v. Spaley, 501 F. App'x 101, 102 n.1 (3d Cir. 2012).

Plaintiff has failed to state any plausible claims for relief.  For the reasons given above, the Court

finds that it is "clear from the face of the complaint that the deficiencies cannot be cured."

Vanderbilt justifiably applied for and received the Mortgage proceeds from AMH and was

entitled to use the proceeds to pay down the Mortgage debt.  No plausible facts in the Amended

Complaint show that any other Defendant engaged in the wrongdoing asserted.  For these

reasons, the Court will not grant Plaintiff leave to amend.

**VI.    CONCLUSION**

For the foregoing reasons, the Court will grant the Motion[s] to Dismiss of American Modern Home (Doc. No. 14), Southwest Business Corporation (Doc. No. 17), Vanderbilt Mortgage and Finance Inc. (Doc. No 18), Mortgage Electronic Registration Systems, Inc. (Doc. No. 19), MERSCORP Holding, Inc. (Doc. No. 19), HomeFirst Agency, Inc. (Doc. No. 20), and WMC Mortgage LLC's (Doc. No. 28).  An appropriate order follows.